Good morning, Your Honors. May it please the Court, Peter Bornstein on behalf of Appellant Mr. Kimoto, Kyle Kimoto, may I reserve half of my time, seven and a half minutes, for rebuttal? Certainly, but manage your own time. Thank you. There are at least three trial issues in this case that the District Court and the FTC failed to consider below and that require reversal of the District Court's order granting the motion for summary judgment to the FTC. The first is that to the extent that Mr. Kimoto was involved with any of the defendants or any of the products after his incarceration on April 18, 2008, three of the four products in this case were launched after his incarceration. Acai Total Burn was released on June 2009. Grant Connect was launched on October 2008. And Domain Processing was launched on May 2000. Let me ask you the question. With the exception of Acai, and I agree with you on that all around, but with respect to the others, it seems to me that your client was accused of, number one, forming the organizations that were involved, setting up the prototype, hiring the people, doing everything but actually launching in some of these instances. Do you have any case law that suggests that someone who was that involved in this kind of a situation cannot get the relief, or rather is entitled to relief from what the FTC obtained in this case? Your Honor, admittedly, this case is unusual given the facts. That's always a problem, isn't it? Yes. And so for that reason, there are very few, if none, cases involving this type of factual situation. The FTC would have a criminal conspiracy standard imputed to the FTCA. And on that point, first of all, if Your Honors choose to apply that standard, there's a trialable issue of fact as to when the illegal agreement occurred and what it entailed. So your argument is a summary judgment matter rather than a matter of whether the law applies here. That's true. There are trialable issues of fact with the conspiracy standard. But as well, Your Honors, we argue that in your discretion you should not apply a criminal conspiracy standard to the FTCA for a variety of reasons. First of all, it's a standard that works pretty well for the FTC at this point and is easy to apply. For the vast majority of cases, the standard for injunctive relief, directly participating or the authority to control, works for the FTC because generally directors and managers of the corporations that are accused of the violations are small, closely held companies. Further, criminal conspiracy statute as far as giving the ability for the FTC to prosecute a wide variety of business owners and marketers who may have in the beginning had a good faith belief that their marketing strategy or idea was in fact legal. And imposing some sort of secondary liability into the FTCA would expand the net far broader than I think what the FTC really needs to enforce the FTCA. So on those two points, we argue that the criminal conspiracy standard should not be imposed. It has never been imposed by any court that we can find. To the point, though, that you may be wondering about as far as, you know, what to do with somebody who may appear to be the mastermind and puts all these things in motion and then somehow gets out of the corporation or the product. And the simple fact is that the FTC has broad powers already and their powers can't be unlimited. This is such a rare case. Well, we're not really asking for unlimited powers. These really track part of the mission of the FTC, don't they? You're just saying that as a matter of discretion, they ought not to be expanded to include the level of, shall I say, pattern inclusion that the FTC has requested in this case. Well, the FTCA is a remedial statute. It's not a punitive statute. So to the extent that the FTC has the power to prevent consumer injury and to fence in future conduct, we argue that that power is satisfied here. We concede that he had the authority, Mr. Komodo had the authority to control Global Gold. And to that point, there's a tribal issue as to whether when that authority control ended. He was indicted in June 2007, and he offered evidence below that he ended his involvement with Vertec from starting in January 2008 to prepare for his criminal case. So even there, there are tribal issues of fact as to what injunctive relief is merited and also when and if he had knowledge of the illegality of any of the products. Another tribal issue of fact or honors is the extent, like I just mentioned, as far as from January 2008 to April 2008, his ability to control any of the products. The papers below really focus on Mr. Komodo's starting the corporations and bringing in people that he had worked with before. But that's really not an issue as far as his directly participating in authority to control domain processing, Grant Connect, and Acai. The real tribal issue of fact and the real issue that he deserves a trial on, or at least further proceedings, is what control he had and what he knew. So you don't think it's enough to show that he was a mastermind to set this up? Well, there's a tribal issue of fact as far as whether he is the mastermind. Yes, but I'm not talking about the factual issue. I'm asking about the legal question. It sounds to me like you're saying that even if they showed he was the mastermind at the inception of these various schemes, that he lacked sufficient control as they were carried out. Is that right? Well, I think that that goes to the standard that your honors might choose to adopt as far as secondary liability. We argue that under the FTCA as it stands now, authority to control and directly participate requires, if not being in the corporation at that time, a really close nexus. When you say being in the corporation, are you arguing that for part of this time he was incarcerated, certainly, and for part of the time he argues that he was really withdrawn in the sense that he was preparing for his trial? But it seems to me that we're sort of confusing a couple of different terms. So I'm not sure if you're really contesting that they had sufficient evidence to show that he was a mastermind at the inception of the project. It sounds like you are. Or are you arguing that there was sufficient indication that he was withdrawn successfully from what I'll call a conspiracy? I see my time is up. May I answer your question? So there's a tribal issue of fact as far as whether he was the mastermind and it was an illegal agreement in the first place. And then I think that given that the FTC has just brought up the withdrawal standard, there's also a tribal issue of fact if there is some sort of illegal agreement, whether he did withdraw by his incarceration. Go ahead. No, no. I was just going to say, so just to encapsulate again, further to my colleagues, I gather you're saying you recognize that we can apply or not apply the law that the FTC did here. Your whole case seems to rest on the concept of just apply traditional summary judgment analysis. And your position is that there are major aspects of the FTC's case that simply are, they're contested, there are material issues of fact, and you simply can't properly find summary judgment on these points. If we agree with you, then you would win. If we don't agree with you, then you would lose. Is that basically right? Yes, Your Honor. Okay. Thank you, counsel. Thank you. May it please the Court. Jack Metzler on behalf of the Federal Trade Commission. Mr. Komodo would have this court hold that he has escaped liability for defrauding millions of dollars from consumers that went to the enterprise he created by becoming incarcerated for another fraud that he did earlier. Well, counsel, I am really distracted and concerned by the fact that you cite a lot of criminal cases, a lot of criminal drug conspiracy cases. And I fully appreciate that your position is that he was the mastermind of setting up these various schemes. But even if we were to analogize to criminal conspiracy cases, at some point it's possible to withdraw. And I don't see your briefs acknowledging that. What would that take? Well, let me be clear. We don't rely on applying the law of conspiracy. What we said in our brief is that… You cite a lot of them. We do. And what we said is that, you know, conspiracy cases, the courts have considered them not only criminal, but also civil conspiracy cases. In those cases, courts have thought carefully and thoughtfully about how individuals who join together in an illegal scheme should be held liable. But the standard that my friend urges is sufficient, is sufficient here to uphold these orders. Will forever, though? I understand your question. I mean, there's a series of schemes here. There's a sequence of events. And, of course, as it gets more and more attenuated, your case strikes me as getting weaker and weaker in terms of the government's ability to show direction and control. So where does it end? Well, that's why I think… That is why we look to conspiracy cases. My friend is right. There are not cases in the FTC Act context that have considered this particular question. So it's useful, I think, to look to those concepts. I don't think you need to get to that point in this case because the regular standard, whether he participated and controlled the products at issue, applies here. You just heard my friend admit that Mr. Komodo does not contest his control of Vertec. He doesn't contest… Well, he said global gold. Well, he did say global gold, but I believe that he meant the company or the product, global gold. But in any case, he also hasn't contested his control. Well, I think it might matter, and forgive me for interrupting, but I think it might matter because they did roll out, I think of this as a timeline, and so at the end there's the weight loss berry product. Do you control that he had sufficient evidence to show that he had control over that product? I realize it's not a big-ticket item, but I'm just looking at the evidence, and it looks awfully skinny to me. There's no evidence in the record that he knew about or had any control of that product, and the district court didn't make a finding. We think you could uphold the dollar amount on that order, $8,000, based on foreseeability. How would we do that? Because if you look at the evidence and what was going on in the company, it really didn't matter what product it was. Their product was Gossamer. It was whatever brings the customers to their site. Because you're basically saying if you start a company, you're liable for all the products and schemes they may produce down the road. And no court said that. I'm sorry for interrupting, Your Honor. No court said that. I agree, Your Honor. One way to look at it is Mr. Komodo built a railroad. He built a fraud railroad and he started it going, and for all but the one product, those tracks were laid and set out, and it was quite clear where they were going. Are you really arguing a foreseeability concept, that that would be the limiting factor here? Well, in criminal cases or in conspiracy, civil and criminal cases, conspirators are held liable for the foreseeable acts of their conspirators. But it is possible to withdraw from a conspiracy. It is. And you just said that on what I think of as the fourth product, the one that chronologically occurred latest, I think you said there really isn't evidence, but it would have been foreseeable because he was the mastermind at the inception. And so my question is, is that really the standard you're going to suggest we should apply? I think you could apply that standard. If that were the case, then, since he was the mastermind and there are some of his compatriots who are still doing who knows what, would he be responsible for all of their shenanigans going forward? No, I don't think so. I think it's clear in this case you could say, well, it's foreseeable they're going to keep selling the same products they already started. I could see the argument. Where is the foreseeability in the statute? There is not, Your Honor. There's control. How are we even talking about it? I was asked to. Well, no, I mean, the statute talks. I mean, you have participated directly in deceptive acts, right, that you had the authority to control, knowledge of them, and there's nothing with respect to this weight loss product, is there? That's correct, Your Honor. Okay. As much as some of us would like it all to be true. But it sounds like they concede global gold, and you've pretty well conceded the weight loss product. But what about the other two products that are sort of chronologically sandwiched? Well, I don't think the court needs to go beyond the ordinary standard that this court has applied in many cases. And the reason is no court has ever held that participation or control has to be in every single part of a deceptive scheme. And that's true even if the parts happen at different times. So if I may try another analogy. Before you do that, though, my colleague's questions really get to the heart, obviously, of what we're talking about. You've got four different entities. He was a mastermind. He set them up. He set up the scheme on all of them, allegedly. Yet he's, you admit, I don't know how you say it, a kai or whatever, that he's not responsible there. What happened or didn't happen that gets him out of liability on that one and yet keeps him in on the second and the third? He set them all up, allegedly. Why is he out on that? Is there something that he did to, if you will, terminate his involvement in the conspiracy, in quotes, using the criminal context? Or was it something else that distinguishes his lack of culpability on this last entity? Well, there are two ways you could do it. Under the ordinary FTC standard for holding an individual liable for corporate practices, it would be whether he participated in or had the authority to control the deceptive conduct. Well, that would be true. You said it's true of the first, second, third, fourth. You said that was true of the second and third entities but not of the fourth. What's the difference other than the passage of time on those points? All three that we're talking about, setting aside the Berry product, were started and were in development while Mr. Komodo admits he was in control of the company. Okay, so what you're saying is it is his admission that he was in control and involved. Was it before he was in jail on those three? All those products were developed and some launched to a greater or lesser extent. Okay, and on the last one, that occurred entirely while he was incarcerated, is that right? That's right. There's no evidence anyone was thinking about the Berry product before he went to jail. Well, Grant Connect wasn't launched. I don't think the government even argues that, that it was launched until October of 2008. That's correct, Your Honor. He was incarcerated. He'd been convicted. That's correct. Okay, so how do you get there in response to Judge Smith's question? Well, if I can return to my analogy, imagine we have a pizza shop and our pizzas are fraud pizzas. The guy who makes the sauce participates in making the pizza, even if he goes home before the first order. You wouldn't say that he had nothing to do with that pizza that went out at 11 o'clock even though he went home at 6 o'clock. Okay, so on Grant Connect, what's the evidence that he was making the sauce before October of 2008 and, more importantly, before April of 2008 when he was incarcerated? Well, the Grant Connect product started as Mr. Komodo's idea. O'Connell Gray, who are the people who ran sort of the database side, we have affidavits from each of them saying Mr. Komodo approached them with this opportunity at the beginning, at the outset of the venture when they were also starting to work on the line of credit global gold product. But it's a hard one, right, because it sort of petered out. And then I think your brief talks about the resurgence of it in October of 2008. It's as though they had discussed it and taken some steps and then it somehow became sort of dormant. So what do we do about that? I think their brief talks about it petering out and then coming back up. And to the extent, to a certain extent, that's consistent with the evidence. But they neglect to mention that a lot was going on. And if you look at what's cited in our brief, you can see that they negotiated the terms and conditions of how this product would be split up among the various companies involved. The profit split, 55-45. Is that what you mean? Yes. Uh-huh. Okay. And Mr. Komoda was also the contact point. They went out and bought the grant product. And just keep in mind here that no defendant below defends this as a legitimate product. The idea that you can get grants for all these wonderful purposes was a fraud from the beginning. Right. But as both of my colleagues have pointed out, I'm still looking for direction and control as to the GrantConnect product. So in the meantime, then they drafted terms and conditions. They started to draft the initial landing pages. That's all pre-indictment, right? Yes. Well, I don't know if it's pre-indictment, but it's certainly before April of 2008. Okay. I think you mentioned earlier that, if I heard you correctly, that your take of the evidence is that Mr. Komoda admitted that he was in control of Vertec or Vantex until he was actually incarcerated. Is that right? I don't think they would agree that until he was incarcerated. I don't think so either. So what is it you just said? They do not dispute that he had the authority to control Vertec. Until when? I'm sorry? Until when? At least until he was incarcerated. I don't think the record reveals anything beyond that. Is that the line of demarcation? Is that when the sauce ends? Well, so the things that he had control over while he was at the helm, I think, yes, that would be. So for our purposes, and we look at each of these entities, if he was in the kitchen stirring the sauce before he went to jail, you think he's covered. Once he went to jail, he couldn't stir the sauce and, therefore, he's not covered. Is that right? Basically, yes. If he goes to jail and someone comes and says, well, now we're going to have an Alfredo pizza and it's going to have a white sauce, then I suppose we're in a situation. So that is, in conspiracy terms, that is the evidence that he has withdrawn from the conspiracy because he's in jail and doesn't have an ability to do anything more. So in a conspiracy case, typically what the courts require is some affirmative act of withdrawal, and that means either communicating to your co-conspirators that you no longer want to be involved in cutting all ties or doing something to undermine the purpose of the conspiracy, like approaching the authorities. Do you want us to use that analogy, the conspiracy analogy, in the cases that there's a communication of an intention to cease involvement in the conspiracy? Well, I mean, there's a long line of cases. Right, I understand. But is that the government's position that if we adopt your proposal, that that's the line of demarcation you want? Yes, Your Honor, to the extent that you have someone who's alleging that they're withdrawing. And in this case, whether Mr. Komodo said anything or not, the fact that he went to jail serves as, if you will, a de facto resignation from the conspiracy from your perspective. I don't think so, Your Honor. My guess is the organized crime prosecutors in the Department of Justice would disagree with that, right? I think you're probably right. I won't speak for them. Was there evidence while he was in jail that he was aware that his family continued to be supported with, well, I'll just say the proceeds of these various enterprises? Well, there's not. But, of course, he set it up that way, Your Honor. He created the company in his wife's name purposefully, as she testified, to hide from the FTC because we were already watching. But, I mean, that was true at the inception, again, but after he went to jail, it seems to me that one of the government's arguments is that, in terms of whether he withdrew or not, is that his family continued to be supported, his immediate family, by the proceeds. And I'm just wondering if the record tells me that he was aware of that. There's no affirmative evidence that he was aware of that, although it's hard to imagine that when his best friend is still in the company and visiting him every couple of weeks. How long did that go on? How long did Juliet continue to receive, I think it said, monthly checks? She was taking money monthly up until the time that the FTC shut it down, which was, I believe, in about July of 2009. So is that another year, year and a half, actually? A little bit more than a year, yes. If we conclude that the evidence is insufficient on the Acai total burn conspiracy, does the injunction need to be modified accordingly as well? I see my time is about to expire, if I may. Sure. No, Your Honor. What basis would be there to prevent him, if we conclude that the evidence is insufficient on that count, what would support the court's injunction as to engaging in nutritional product promotion and so forth? Well, there are two different standards, one for the monetary relief, which requires participation and control and some knowledge. The knowledge requirement is not part of the injunctive standard. Moreover, the injunction is viewed on an abusive discretion standard. So the court would have to find that it was an abuse of discretion to include an injunction that includes, to include in the injunction the prohibition on marketing the nutraceutical products. If I may, just one more sentence. I think that would not be justified because under this court's case, Litton Industries, one of the factors that the court considers on the scope of an injunction is whether the practices can be extended to other products. And here, the one product we know it was extended to was the nutraceutical product. So I think it was reasonable under that standard to hold it. It was within the district court's discretion to include that product as well. Thank you, counsel. Rebuttal. May it please the court, Michael Driscoll on behalf of Mr. Kamoto. Following up on Judge Thomas' last question regarding the injunction on AZAE, I think that question highlights why the foreseeability standard, importing the foreseeability standard into the FTCA should not be done. First, the district court found in its order for summary judgment that the misrepresentations with AZAE were all related to the health benefits of that product. That was unique from all the other, from the three other practices. And it was launched 14 months after Mr. Kamoto was incarcerated. So to hold Mr. Kamoto liable injunctively or monetarily for that product that was unique and couldn't have been foreseeable, even under the FTC's proposed standard, would be an abuse of discretion. And it highlights why the FTC should not have that power to hold Mr. Kamoto liable in the first place for that product. That also highlights the second part about withdrawal. And if this court does impose a withdrawal standard or does create a withdrawal standard into the FTCA liability, a highly relevant factor should be the timing issue. The timing issue. Should be the what? The timing issue, the time of withdrawal, Your Honor. For AZAE, as the judges have alluded to, 14 months after incarceration with no talk of the product prior to his incarceration is too long, and therefore withdrawal would be dispositive. And motion for summary judgment should be granted in Mr. Kamoto's favor. And what about the fact that his family continued to benefit from these ongoing efforts? Your Honor, his wife did, and his wife was. Well, and his children, right? He was supporting his family, right? I mean, the paychecks were all through his wife, yes, Your Honor. And those were presumably to pay for his children. But the record indicates that, first of all, Mrs. Kamoto, or now Miss Rather, wanted to shut down the company after Mr. Kamoto went to prison, but Mr. Henriksen convinced her otherwise. Also, Mrs. Kamoto at the time's involvement in the companies was not just a figurehead. She, according to Matt Dacco's testimony or deposition, she helped to hire him. She was also involved in the AZAE product and involved. There were e-mails back and forth about one of the banners. So she was involved in that company. So that should not be imputed onto Mr. Kamoto for his liability on any of the products. Why do you say any of the products? I mean, basically, I understand, Your Honor, on AZAE, total burn, because that was initiated after he was incarcerated. But as to all the other products, he directly participated, he directly controlled at some point. Why should a liability attach to those? Your Honor, first of all, it should not impose. You have to look at each of them individually. Grand Connect launched in October 2008, which was, I think, six or so months after he was incarcerated. The only evidence in the record as of this moment is that he had an idea in 2006 and brought it to O'Connell Gray. There's also testimony in the record from his affidavits from Tasha Jim Paul and Michael Henrickson that show that he had no authority to control those products because they were going through developments up until that time. Because what? I'm sorry? Because they were going through developments up until the time of the actual launch. So these are all disputed facts that show that the summary judgment order was improper at the district court level. The injunction is broadly worded. I'll grant you that. But this wasn't his first introduction to the FTC. There's this FTC versus a sale, is it? Correct. Earlier. I hate to use the word scheme, but I'm going to use the word scheme. So how would you, which seems to me to be entirely appropriate for the court to have considered, because he's worried about making sure this doesn't reoccur. So how would you have us modify this injunction? Your Honor, first the injunction should focus and it needs to be reasonably related to the actual misconduct found. And the actual misconduct found needs to be Mr. Kimoto's involvement in that conduct. While the FTC does have a fencing-in power, that fencing-in power is not unlimited. Right, but that's Judge Thomas' question, counsel. Look at 1, 2, and 3. Why aren't all of those related to products that he did direct or control at some point or other? Your Honor, they are related to, but they go too broad. They encompass too much lawful conduct. There's no lawful conduct. So how would you have us modify them? How would you trim 1, 2, and 3? Your Honor, 1, 2, and 3 would need to show that if Mr. Kimoto was not doing fraudulent or deceptive practices for any of those three product lines, then he can still continue to market in those practices. However, the definition of assisting others goes too broadly, and it goes to prevent Mr. Kimoto from even being a cashier, which goes beyond the scope of the three headers in that permanent injunction. So the permanent injunction is still overbroad, even if this Court does find liability. The Court didn't want him to have access to anybody else's credit card. You think that's too broad, given his history? Yes, Your Honor. I think it is too broad, given that this also prevents him from working as a cashier or as a waiter, just charging someone's credit card with them physically present. It goes too broad in that sense. So the EFTA violation there isn't reasonably related to the EFTA violation as the district court found. And I think all of this goes back to the summary judgment standard, and this shows that there are still disputes in the factual record that the district court did not consider. The district court didn't consider the timing of the four products. The district court alludes to, talks about Mr. Kimoto's incarceration on the 49th page of the order, and does not specifically delineate how Mr. Kimoto's involvement was different than the other defendants. And for that reason, this Court should grant summary judgment in favor of Mr. Kimoto, as well as reverse summary judgment in favor of the FDC. Thank you, counsel. The case has certainly been submitted for decision. I want to thank you for your pro bono representation.
judges: Thomas, Smith, Christen